No. 25,768.

CECIL C. CLARK, FRED MAY, M. E. POTTS, A. A. WILDS, J. A. JONES, and P. T. FOLEY, *Appellees,* v. FRANK E. GEORGE, THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LABETTE et al., *Appellants.*

#### SYLLABUS BY THE COURT.

COUNTIES—*Recovery of Money Unlawfully Paid—Who May Sue.* There being no statute specifically giving them that authority, individual taxpayers cannot maintain an action for the benefit of the county to require the repayment of money unlawfully paid out by it, although the commissioners have refused to institute such a proceeding themselves.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed June 6, 1925. Reversed.

*Elmer W. Columbia,* and *S. J. Mattox,* both of Oswego, for the appellants.
*E. L. Burton,* of Parsons, for the appellees.

The opinion of the court was delivered by

MASON, J.: Six taxpayers of Labette county brought this action against the publisher who printed the ballots for a general election (other defendants being joined) to recover, for the benefit of the county, an amount it had paid to him on that account in excess of the legal charge, no fraud or willful misconduct on the part of the commissioners being charged, however. Judgment was rendered in favor of the plaintiffs, and the defendants appeal.

The right of the plaintiffs to maintain the action is asserted upon the ground that the commissioners, upon whom the management of the county's business is devolved (R. S. 19-212), had refused to institute any litigation in the matter. In a number of states, sometimes by analogy with the right of a stockholder in a private corporation to invoke the aid of the court in its behalf if the directors will not, individual taxpayers are allowed to prosecute claims in behalf of a city, county or like body, where the public officers upon whom the duty rests refuse to do so. (7 R. C. L. 965; 19 R. C. L. 1167, citing notes, 14 L. R. A., n. s., 298, and 19 Ann. Cas. 776.) The reasons for allowing that procedure are much the same as might be urged in favor of permitting an individual taxpayer to procure an injunction against the illegal conduct of public officers because it would result in increasing his taxes. As a rule, such injunctions are countenanced by courts which allow individuals to sue for the benefit of a public corporation or quasi corporation because its officers will not. In one instance it was said:

"If a taxpayer, to avoid the burdens of needless taxation, may sue to prevent public officers from squandering public money, there is, it seems to us, no good reason why he may not also commence and prosecute to judgment an equitable action for the enforcement of a corporate claim which the officers of the corporation have refused to enforce." (*Cathers v. Moores,* 78 Neb. 13, 18.)

In another:

"It has long been a well-established doctrine that courts of equity have jurisdiction to restrain the illegal diversion of public funds at the suit of a citizen and taxpayer, when brought on behalf of himself and others similarly situated; and to compel the restitution of public funds which have been illegally diverted and lodged in the hands of persons not entitled to the same, who have taken them with notice of the wrongful diversion, and the governing body of the subordinate or local government will not act or take the necessary steps to have such funds restored." (*Johnson v. Black,* 103 Va. 477, 484.)

In another:

"The objection urged against the right of a taxpayer to maintain a suit on behalf of the public has been presented in many cases in this court in which the relief sought was an injunction against the unauthorized application of the revenues of the county. Such right has uniformly been upheld. . . . The reasons given by the court in support of the right of a taxpayer to maintain an action to enjoin an unlawful disposition of public funds apply with equal force where the wrong has been accomplished, the fund dissipated, and the public officers, whose duty it is to sue for and recover the money, obstinately or corruptly refuse to act." (*Zuelly v. Casper,* 160 Ind. 455, 458, 459.)

And another:

"It is well settled in this state that a taxpayer may maintain an action in equity, on behalf of himself and all other taxpayers, to restrain public officers from paying out the public money for illegal purposes, and may also, under the proper circumstances, compel public officers, and even third persons, to repay into the public treasury money already paid out illegally." (*Webster and others v. Douglas County and others,* 102 Wis. 181, 189.)

Since the decision in *Craft v. Jackson Co.,* 5 Kan. 518, this court has consistently held to the view that in the absence of a specific statute, such as R. S. 60-1121, the injury to a taxpayer as such does not give him a standing to invoke injunction against the course of public officers which is about to cause it. We have even held that the county attorney may not sue to recover for the county money which has been paid out without authority (*Kerby v. Clay County,* 71 Kan. 683, 81 Pac. 503), although in a proper case he or the attorney-general might doubtless compel by mandamus the bringing of an action for that purpose by the county board.

In the first of the Kansas cases above cited it was said:

"It is probable that some claims are allowed that would not bear a strict legal investigation. It is possible there are many such. The law seems to rely on the interests of the members of the board to protect the interests of the county. If this is not sufficient, the remedy may be found in the next election; or if the case is flagrant, a prosecution by the proper public officer may prove effective." (p. 522.)

And in the second:

"Our holding that the board of county commissioners controls litigation in which the interests of the county are involved does not put boards of county commissioners that transgress the law, or that act corruptly, beyond the reach of the law, nor leave the people without remedy. The county attorney may institute a variety of proceedings in the name of the state against unfaithful officers. They may be prosecuted upon criminal charges, and may also be removed from office in civil proceedings; and thus moneys wrongfully paid out may be recovered by their successors." (p. 686.)

We think the general principle invoked in these cases applies with equal force here, and forbids the maintenance by private individuals of an action in behalf of a county.

A reversal is ordered, with direction to render judgment for the defendants.