No. 30,110.

THE STATE OF KANSAS, ex rel. J. G. LOGAN, County Attorney, ELIZABETH HUPP, W. C. PEARCE and C. L. HUPP, *Appellants,* v. THE KANSAS STATE HIGHWAY COMMISSION, *Appellee.*

(299 Pac. 955.)

Opinion filed June 6, 1931.

*J. G. Logan,* county attorney, *J. N. Tincher, Don Shaffer,* both of Hutchinson, and *Randal C. Harvey,* of Topeka, for the appellants.

*Wint Smith,* assistant attorney-general, *Fred S. Jackson, James E. Smith,* both of Topeka, *Ezra Branine* and *Alden E. Branine,* both of Newton, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action against the state highway commission, brought in the district court of Shawnee county by the state on relation of the county attorney of Shawnee county and

also by three individual residents of and property owners in Harvey county, to enjoin and restrain the commission from materially changing the route of a designated state highway where the changes are not required for public safety. The trial court sustained a demurrer to the petition, and plaintiffs appeal.

Four questions are involved as to the sufficiency of the petition: (1) Whether the county attorney of Shawnee county has the power to commence an action in the name of the state in the district court of Shawnee county, to enjoin illegal acts of the highway commission; (2) whether property owners whose property is proposed to be taken by an illegal change in the highway can maintain such an action; (3) whether the district court of Shawnee county has jurisdiction to entertain a suit to enjoin illegal acts of the highway commission relating to a road in another county; and (4) whether the petition states facts sufficient to constitute a cause of action and entitle the plaintiffs to injunctive relief?

The first and third points will be considered together, and as to the jurisdiction of the district court of Shawnee county to entertain such an action against the Kansas state highway commission, it can be readily answered in the affirmative on the strength of the provisions of chapter 225 of the Laws of 1929, creating the commission, section 2 of which specifically states the commission shall maintain its office in Topeka, Shawnee county, Kansas. This jurisdiction in the district court of the county where the commission holds its meetings, has its office, and where service can properly be had upon it will, when the action is commenced by the proper party or parties, extend to acts of the commission relating to roads entirely within the boundaries of another county. (*Clay v. Hoysradt*, 8 Kan. 74; *Fay v. Edmiston*, 28 Kan. 105; and *State, ex rel., v. Flannelly*, 96 Kan. 372, 152 Pac. 22.)

In the last case above cited the action was brought by the state on relation of the attorney-general, in the district court of Montgomery county, against certain gas companies doing business in that county and the receivers of one of the gas companies, by leave of court, made the public utilities commission of the state of Kansas with offices in Topeka, Shawnee county, a party defendant, and sought to enjoin the commission from enforcing one of its orders as to rates to be charged for gas in Montgomery county, and it was held that the acts of the commission of which complaint was made were performed by it in Shawnee county where its offices were,

and the district court of Montgomery county did not have jurisdiction of the commission.

Appellants cite the case of *Hornaday v. State*, 62 Kan. 822, 62 Pac. 329, in support of their view of the capacity of the county attorney of Shawnee county to bring the action in the name of the state concerning the proposed change in a certain highway lying wholly within the boundaries of Harvey county. That was an action brought in the district court of Clay county in the name of the county attorney of Clay county against the board of trustees of the asylum for the insane to enjoin the board from locating the asylum at Parsons, and service was had upon one member of the board in Clay county. The power of the county attorney to institute the action was upheld on the ground that Clay county was interested in the matter of the location of the asylum. It is argued by appellants that the people of Shawnee county will travel upon the highways of Harvey county and they in common with all taxpayers of the state pay taxes used in part to maintain the highways in Harvey county and therefore the county of Shawnee is interested, and the county attorney should in their behalf endeavor to stop the making of the proposed change.

There is very little similarity in the facts in these cases. The asylum board was about to locate a site for a state asylum and expend $100,000 appropriated for that purpose, which would be followed by vast expenditure of funds for buildings and equipment. The board was charged with the duty of selecting a healthful site within a certain prescribed distance of an incorporated city. There existed in the case an uncertainty as to the extent to which the board could go either in contracting for the site or instituting condemnation proceedings. The taxpayers throughout the state were greatly interested in having such an institution located at a suitable place, especially when it involved the expenditure of such a large sum of their money, and that the site be condemned rather than purchased by contract, if it might cost more by contract. The citizens of Shawnee county have no such interest in the proposed change in the established highway in Harvey county.

The authority of the county attorney to maintain actions in the name of the state is embodied in R. S. 19-702, which is as follows:

"It shall be the duty of the county attorney to appear in the several courts of their respective counties and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested."

Shawnee county was not a party to this action so the authority of the county attorney is limited to the fact of the state or his county being "interested." We have no hesitancy in concluding that the travel over the road in Harvey county by citizens of Shawnee county and the contribution in the way of taxes, some of which may be used by the state in the maintenance of the Harvey county road, is not such an interest as is contemplated by this statute.

An examination of the case of *State v. Lawrence*, 80 Kan. 707, 103 Pac. 839, cited by appellants, shows it was brought by the county attorney in the county where the trouble complained of existed.

The cases of *State, ex rel., v. Doane*, 98 Kan. 435, 158 Pac. 38, and *State, ex rel., v. Bradbury*, 123 Kan. 495, 256 Pac. 149, were original proceedings in the supreme court instituted by the attorney-general. Both refer to the right and duty of the county attorney to institute mandamus proceedings to remedy existing wrongs, but they do not refer to the county attorney of Shawnee or any other county except of Osborne and Labette respectively, where the remedy was needed.

Of course, under the above statute the state is interested, but counsel for appellants do not claim the power and authority of the county attorney in such matters is coextensive with that of the attorney-general. The relation of these two very important public officers was discussed and compared in the recent case of *State v. Finch*, 128 Kan. 665, 280 Pac. 910, where a ranking of obligations and duties was fully recognized. As indicated in that opinion, it would be contrary to the general conception of the duties of these two officers to fail to recognize a head or superior, and in harmony with such holding it would be equally out of line to hold that the statute above quoted gives a county attorney power and authority to maintain in his own county, if he can get service on defendants there, an action concerning matters practically and almost exclusively affecting the people of another county, the definitely recognized province of the attorney-general.

Appellants cite the case of *Nichols v. Shawnee County*, 76 Kan. 266, 91 Pac. 79, but there the county attorney was directed by the county board to defend litigation pending in the federal court sitting in his own county, and it was held he was entitled to recover compensation for such extra services rendered in his home county.

Three citizens of Harvey county, each owning a quarter section through which the proposed road runs diagonally instead of border-

ing it on one side as formerly laid out and used, join as plaintiffs in this action seeking to enjoin the commission from changing the location of the road, because the improvements on two of the three places will be left off the highway whereas they are now located on the highway. The petition shows that the commission has invoked the law of eminent domain to effect the change, and the only special interest these individual landowners are shown to have in the matter is the damage two of them will sustain by reason of the inconvenience and loss in value of their properties by reason of the increased distance of the improvements from the road. . This may be an element of the damage which they may be entitled to recover, but it is not an interest which will entitle them to maintain an injunction.

Appellants cite *Poirier v. Fetter*, 20 Kan. 47, *Hanselman v. Born*, 71 Kan. 573, 81 Pac. 192, and *Ruff v. Shawnee County Comm'rs*, 127 Kan. 188, 272 Pac. 189, in this connection. An examination of them shows the facts were very different from those in the instant case. In the first one cited the injunction was by a landowner against a public officer to restrain him from tearing down the fence and opening a highway where no highway had ever been established. The second case was where the act of the legislature of 1887 declaring all section lines to be highways had been repealed by a subsequent legislature as to the county where the officers were threatening to open a certain section line as a highway. And the third case was where a landowner attempted to stop by injunction the opening of a highway on a railroad right of way leased by the railroad to the county for highway purposes, and it was held:

". . . if the contract is illegal he has a right to maintain such action for injunctive relief so far as he is damaged peculiarly and differently from the general public by its performance; but he has no right to provoke litigation over details of the lease contract of no more concern to him than to the public in general." (Syl. ¶ 1.)

Under these conclusions as to the want of authority of the county attorney and the three landowners to maintain this action, it may not be necessary to go further in the case, but the sufficiency of the petition was and is the most important feature of the appeal and deserves consideration.

The petition alleges that highway No. 50 south, running through Harvey county, had been designated as a part of the state highway system and "that said proposed change is a substantial change of

said highway . . . that the Kansas state highway commission has not determined that the public safety requires such change in said highway and has repeatedly announced they were not proposing to make the change in the interest of public safety, but . . . in the interest of economy."

Section 3 of chapter 225 of the Laws of 1929 provides:

"That the highways heretofore designated as state highways shall be a part of the state highway system and no substantial change therein shall be made except when the public safety shall require such substantial change."

The language of the provision is plain and needs no interpretation, and the allegations of the petition that the proposed change is substantial and is not being made for public safety would, if taken alone, be sufficient to state a cause of action, although such allegations might well be subject to the criticism of being conclusions rather than statements of fact. The petition has, however, stated the facts as to the present location of the road and the location of the road as it is proposed to change it, giving the starting point, the direction and distance, so that from the description a diagram of each could be drawn, and it shows that the present road generally follows the section lines with a few right-angle turns, whereas the proposed change is by making it an angling road diagonally across the three quarter sections owned by the three individual plaintiffs running across each of said quarter sections from the northeast corner thereof to the southwest corner thereof. The petition also states that this dividing of farms will necessitate the use of several farm crossings not theretofore needed and that the road is through a flat and level country.

We must consider this description of the two roads as well as the allegation of the change being substantial and not in the interest of public safety, as evidently the trial court did, when it held in effect the petition did not show a substantial change and did show the change was for public safety.

Observation and experience prompt one to believe the elimination of right-angle turns is in the interest of public safety. It appears from the description given that instead of four 90-degree turns there are substituted by the proposed change two 135-degree turns, which would compel a conclusion that it is naturally in the interest of public safety. Counsel insist that to reach such a conclusion would require the exercise of judicial notice which will not apply except where the matter is universally true. We had not thought it neces-

sary to apply judicial notice to such a straight statement of facts showing a deliberate plan and purpose of eliminating and avoiding right-angle turns and substituting half as many turns on obtuse angles. Unless it can be said that right-angle turns are as good or preferable, for public safety, the matter is not debatable. It is common knowledge, and that is all that is required for judicial notice. (23 C. J. 59.) Counsel reasons that "thousand-foot corners" are just as safe as angling highways. That might be a way to make a change, but it is not before us at this time. It does show, however, that right-angle turns are things to be avoided where possible in one way or another.

As to the proposed change being substantial, the actual change consists of running diagonally through the three tracts owned by the three individual plaintiffs instead of running along one side of each tract, and as to a fourth quarter section, the proposed road runs on the north side of it instead of on the east and south sides of it. These are all the changes, and we would have great difficulty in concluding, as alleged in the petition, that this is a substantial change in a country highway.

Our attention is directed to the decision in the case of *State, ex rel., v. Leavenworth County Comm'rs*, 121 Kan. 148, 245 Pac. 1051, where a change from the end of one street to another at the western boundary of the city of Leavenworth, a distance of half a mile, was held to be a substantial change. A connection with a different street in a city, and at a distance of half a mile, would naturally be more of a change and affect people more seriously than to angle across the same land instead of bordering it on one or two sides.

We think the demurrer to the petition was properly sustained.

The judgment is affirmed.

HARVEY, J., not sitting.