No. 31,595

L. M. Bobbitt et al., *Plaintiffs*, v. The State Highway Commission of The State of Kansas, *Defendant.*

(26 P. 2d 1115.)

Opinion filed November 23, 1933.

*J. R. Hyland,* of Washington, and *Edward Rooney,* of Topeka, for the plaintiffs.

*Wint Smith* and *Otho W. Lomax,* attorneys for the state highway commission, for the defendant.

The opinion of the court was delivered by

Smith, J.: This is an original action in mandamus. Defendants filed a motion to quash the alternative writ. A decision on that motion will settle the action.

The relief sought is to compel the state highway commission to construct U. S. highway No. 36 along a designated route in Washington county. Plaintiffs allege that this route is the one designated in 1926 by the county commissioners and the state highway commission as part of the state system of highways. They point out that the state highway commission is about to construct highway 36 along a somewhat different route and that the change contemplated is a substantial one and not required by the public safety.

There are two classes of plaintiffs. One class consists of residents and taxpayers of the town of Haddam, Kan. The proposed change routes the highway away from that town, and they plead a special interest in the subject matter of the action. They base this spe-

cial interest on the allegation that they sell gasoline, garage service, food and clothing to persons traveling highway 36, and the proposed change will divert traffic away from their town and damage them. The other class of plaintiffs are persons alleging themselves to be the owners of lands through which the proposed highway will pass. They allege that they will suffer irreparable injury by reason of the relocation of the highway. They fail to state in what manner such irreparable injury will be inflicted. The motion to quash the alternative writ is based on three grounds, as follows:

"1. Because the pleadings herein filed show that the plaintiffs are without legal capacity to maintain this action.

"2. Because the pleadings filed herein show that the route for U. S. highway No. 36 in Washington county, Kansas, which route this defendant was directed by the alternative writ of mandamus to be opened, constructed and maintained as a part of the state highway system, is not a part of the state highway system and did not become a part thereof on April 1, 1929.

"3. Because the routing proposed to be opened, constructed and improved by the state highway commission, and which opening, construction and improvement is enjoined by the alternative writ of mandamus herein, is required by public safety."

We will consider the first ground of the motion. It will be noted that the writ sought would order the state highway commission to proceed at once to construct and maintain a certain portion of the highway. It is an action to redress an alleged wrong against the public interest.

Is there such a private right involved here as will give plaintiffs the right to bring an action to control the action of a public body? The court considered such a question in *Heller v. A., T. & S. F. Rld. Co.*, 28 Kan. 625. In that case the plaintiff, a private citizen, sought to challenge the validity of the vacation of a part of First avenue and Crane street in the city of Topeka. She alleged that she purchased her property after the dedication of the addition and of the streets and alleys therein, and that after her purchase of the property she erected thereon valuable buildings which had been occupied for the purpose of conducting a grocery business thereon, and that at the time of the purchase and up to the commencement of the action there was more travel on First avenue and by said lots than on any other street in that part of the city. By reason of these facts plaintiff sought to justify her action by reason of her alleged private and personal interest. The following language is found in the opinion delivered by Justice Brewer:

"The full width of the street in front and on the side is free and undisturbed, and the only real complaint is that by the vacating of the street away from her lots the course of travel is changed. But this is only an indirect result. There is nothing to prevent travel from coming by her lots if the travelers desire it. The way to the heart of the city by her lots is a little more remote than it was before, but still free passage is open to all who wish to pass thereby. No one is compelled to stay away. Access to the lots is the same that it was before, so that the injury is only the indirect result of the action complained of, and it is an injury which, if it exists at all, is sustained by all other lots along the street west of the parts vacated. Travel by those lots may be diminished, travel on streets south may be increased, and to that extent property on such southern streets may be benefited thereby. The same result would follow if some other avenue of approach to the city were specially improved. Public travel naturally seeks that which is the best route; but, surely, that thus the tendency of travel in front of her lots was diverted, would give her no cause of action. The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities." (p. 629.)

To the same effect is *Home Riverside Coal Mines Co. v. McAuliffe*, 126 Kan. 347, 267 Pac. 996, where the court said:

"Early in the history of this state it was determined that '. . . for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character . . .' (*Craft v. Jackson Co.*, 5 Kan. 518, 521; and see *Clark v. George*, 118 Kan. 667, 669, 236 Pac. 543.) This principle applies not only in injunction, but in mandamus (*Bobbett v. State, ex rel. Dresher*, 10 Kan. 9; *Collingwood v. Schmidt*, 125 Kan. 81, 262 Pac. 556) and other forms of action, many examples of which are found in our reports." (p. 348.)

The rule has been invoked a number of times in the type of case we have here, where private parties were seeking to control or question official acts of the highway commission. In *City of Mankato v. Jewell County Comm'rs*, 125 Kan. 674, 266 Pac. 96, the city of Mankato sought to do just what plaintiffs are seeking to do in this case, except that the form of the action was an injunction. This court disposed of the case upon the sole question of the right of the city to bring the action and held that it had no such right.

The question of the right of the second class of plaintiffs to bring the action may be disposed of on the authority of *State, ex rel., v. State Highway Comm.*, 133 Kan. 357, 299 Pac. 955. There the county attorney of Shawnee county and three taxpayers of Harvey county whose land would be taken by the proposed change in the road in Harvey county sought to enjoin the highway commission

from proceeding with the construction of a road. This court held that the county attorney of Shawnee county could not question an act of the highway commission which was to be performed in another county. With reference to the three taxpayers of Harvey county whose land was about to be taken, the court said:

"The petition shows that the commission has invoked the law of eminent domain to effect the change, and the only special interest these individual landowners are shown to have in the matter is the damage two of them will sustain by reason of the inconvenience and loss in value of their properties by reason of the increased distance of the improvements from the road. This may be an element of the damage which they may be entitled to recover, but it is not an interest which will entitle them to maintain an injunction." (p. 361.)

Very little can be added to the force of what has been said on these questions. The decisions do not disclose any disposition of the court to recede from the firm position taken in the case of *Heller v. A., T. & S. F. Rld. Co.*, supra. As the number of projects which the state and its commissions and municipalities undertake increase and the scope of public work broadens, it becomes increasingly apparent that very little progress could be made if any private citizen who fancied himself aggrieved could go into court and question the right of the board, commission or municipality to act. We have therefore concluded that this action can be maintained only in the name of the state, on the relation of the county attorney of Washington county or of the attorney-general of the state. The parties who attempted to bring it had no authority to do so.

This conclusion might very well dispose of the case, but on account of all the circumstances the court has seen fit to treat the other matters raised in the motion to quash.

The petition alleges that in 1926 the county commissioners designated highway 36 in Washington county as follows:

"Commencing at the southeast corner of section twenty-four (24), in township two (2) south, of range five (5), east of the 6th P. M., in said county, and connecting with a prior designated state highway in Marshall county, Kansas, being the adjoining county on the east; and thence running due west in said county on section lines a distance of nineteen and one-half (19½) miles; thence one (1) mile north; thence six and one-half (6½) miles due west, thence one mile (1) south, thence running due west on section lines four (4) miles to the county line on the west side of said Washington county, Kansas, and connecting with a designated state highway in Republic county."

The petition then alleged that this designation was approved by the state highway commission, and that from time to time the high-

way commission caused certain parts of the designated highway to be constructed.

It was further alleged that after the taking effect of chapter 225 of the Laws of 1929, which gave the highway commission power to designate and redesignate certain highways as a part of the state highway system, that no legal or official action was ever taken to change the location of highway 36 in Washington county.

The petition further alleged that the highway commission had failed to open and construct certain portions of highway 36 as it had been designated, as follows:

"Commencing three and one-half (3½) miles west of the east line of said Washington county, and running thence west on section lines, a distance of six and one-half (6½) miles";

and also,

"Commencing at the southeast corner of section twenty-three (23), in township two (2) south, of range three (3), east of the 6th P. M., in said county, and running thence west on section lines a distance of seven and one-half (7½) miles."

It is admitted that the two pieces of highway 36 described above exist only on paper, and that no steps have ever been taken since 1926 toward obtaining the right of way and causing a road to be opened on the designated location. During all the time that has elapsed since 1926, highway 36 has been marked along a route that detoured around the above contemplated parts of the highway in question. The highway commission argues that the failure of the county commissioners from 1926 to 1929 to open the designated portion of highway 36 and to take any steps to cause the location of an actual highway thereon was an abandonment of the entire designation of the highway across the county. We are impressed with this argument. Chapter 225 of the Laws of 1929 provides:

"That the state highway commission shall designate, adopt and establish and may lay out, open, relocate, alter, vacate, redesignate and reestablish highways in every county in the state . . . *Provided,* That the highways heretofore designated as state highways shall be a part of the state highway system and no substantial change therein shall be made except when the public safety shall require such substantial change. Highways designated under this act shall be state highways, and all other highways shall be either county roads or township roads as provided for elsewhere in the Kansas statutes." (§ 3.)

It is doubtful whether the language of the proviso quoted was intended to preclude the highway commission from changing a route

where approximately half of the designated highway never existed except on paper.

It will not be necessary to make a categorical answer to that question, however, on account of the conclusion we have reached as to the contention of the highway commission that the change made is required by the public safety.

We have heretofore quoted that part of chapter 225 of the Laws of 1929 upon which plaintiffs rely. It provides that the highway commission, after the taking effect of the 1929 statute, cannot make a substantial change in the state highway system as previously designated except when the public safety shall require such change. Plaintiffs argue that this change is substantial, and public safety does not require it. Defendant admits that it is substantial but urges that the change was required in the interest of public safety. The route upon which the state highway commission proposed to construct highway 36 in Washington county enters that county on the east at a point a mile south of where the present route enters. It runs west about three and a half miles on that section line, then bears south on a sweeping curve about three and a half miles long, which takes it to the section line three miles south of the present route. It runs west on this section line until it leaves the county on the west. It will be seen that this is almost a direct east-and-west road across the county. The curve spoken of is no doubt there so the road will pass through the city of Washington, the county seat of the county and its principal city. The following statistical comparison of the three routes will be of interest:

|  | Traveled route. | Route proposed never opened. | Present approved proposed route. |
|---|---|---|---|
| Corners at intersections on section lines... | 16 | 4 | None |
| Curves of varying degrees of curvature.... | 12 | 6 | 2 |
| Railroad crossings ..................... | 4 | 1 | None |
| Miles ................................. | 44¼ | 32½ | 30½ |

The road under consideration is part of a transcontinental highway. It is said to be the most direct route east and west across the continent. It is within the common knowledge of mankind that railroad crossings and right-angle corners on a highway should be avoided whenever possible. If we could make human nature over and could issue an enforceable order that each driver of an automobile should drive so that he and his passengers could see the beauties of the roadside and the neighboring hills and woods, then sharp corners and railroad crossings would not make so much difference,

but we cannot do that. Since human nature is what it is, the minute a calm, level-headed man gets into an automobile he becomes possessed of a mania to be somewhere else as quickly as possible. A young lady carefully reared and trained to be thoughtful and considerate of the rights of others, when she feels her foot on the accelerator of a high-powered car becomes the feminine personification of Phaeton, the son of Apollo, who when intrusted with the reins controlling the steeds which carried the sun across the heavens, at first drove carefully, but presently, intoxicated with the control of so much power, drove recklessly, lost control of the steeds, and far from being a beneficent bearer of light and heat came so near the earth that plants shriveled and fountains and rivers dried.

Since we cannot change human nature we do the next best thing and change the physical surroundings so that people can pursue their natural bent with as little danger to themselves and others as possible. Hence, on an improved highway the fewer sharp corners and the fewer railroad crossings the less danger and the greater safety to the traveling public. The writ sought for asks us to order the highway commission to build a road which will have four corners on intersecting section lines, while the route over which the highway commission seeks to build the road has none; to build a road with six curves where the proposed route has only two; to cross railroads once where the highway commission proposes to cross them not at all; and to compel travelers to travel 32½ miles where the highway commission proposes to compel them to travel only thirty. This court has dealt with this question before. In the case of *State, ex rel., v. State Highway Comm.*, 133 Kan. 357, 299 Pac. 955, this court said:

"Observation and experience prompt one to believe the elimination of right-angle turns is in the interest of public safety. It appears from the description given that instead of four 90-degree turns there are substituted by the proposed change two 135-degree turns, which would compel a conclusion that it is naturally in the interest of public safety. Counsel insist that to reach such a conclusion would require the exercise of judicial notice which will not apply except where the matter is universally true. We had not thought it necessary to apply judicial notice to such a straight statement of facts showing a deliberate plan and purpose of eliminating and avoiding right-angle turns and substituting half as many turns on obtuse angles. Unless it can be said that right-angle turns are as good, or preferable, for public safety, the matter is not debatable. It is common knowledge, and that is all that is required for judicial notice (23 C. J. 59). Counsel reasons that 'thousand-foot corners' are

just as safe as angling highways. That might be a way to make a change, but it is not before us at this time. It does show, however, that right-angle turns are things to be avoided where possible in one way or another." (p. 362.)

We have concluded that there is more reason for holding the change in question to be in the interest of public safety than for the holding announced in *State, ex rel., v. State Highway Comm.*, supra.

There is another reason why the writ in this case should be quashed. The route which the highway commission proposed to construct has been approved by the bureau of public roads of the United States department of agriculture. The route which plaintiffs ask us to order the commission to build has not been approved. Without their approval federal funds cannot be expended upon it. Obviously this court cannot order the federal authorities to approve the expenditure of federal funds. The road cannot be built without them.

On account of the fact that any contract for the expenditure of public funds on the highway in question must be let before December 31, 1933, the order in this case will become final within ten days from the date of the filing of this opinion. This is a slight departure from the rule allowing twenty days for the filing of a petition for rehearing.

The motion to quash the alternative writ is sustained and the application for a writ is denied.

HUTCHISON and THIELE, JJ., not sitting.