[Civil No. 3569. Filed November 4, 1935.]

[50 Pac. (2d) 945.]

FUNK JEWELRY COMPANY, a Corporation, Appellant, v. STATE OF ARIZONA ex rel. ARTHUR T. LA PRADE, Attorney General, Appellee.

Mr. Herman Lewkowitz and Mr. J. B. Zaversack, for Appellant.

Mr. Arthur T. La Prade, Attorney General, Mr. John Francis Connor, Assistant Attorney General, for Appellee, and Mr. C. H. Young, of Counsel.

ROSS, J.—This is an action by the state, on the relation of the Attorney General, to enjoin the defendant Funk Jewelry Company, a corporation, from practicing optometry. The answer to the complaint consists of a plea in bar, a general demurrer, and a general denial. The plea in bar and the demurrer were overruled, and the trial proceeded, with the result that the court entered judgment enjoining the defendant as prayed.

The principal question necessary for us to decide is whether the complaint, alleging that the corporation defendant, through a registered optometrist, is employing objective and subjective means and methods, other than the use of drugs, to determine the refractive power of the human eye or any visual or muscular anomalies thereof, and prescribing or adapting lenses or prisms for its correction or relief,

states a cause of action for injunction against such practice.

Article 11, chapter 58 (sections 2570–2576), Revised Code of 1928, contains legislation defining and regulating the practice of optometry. Therein it is provided that a person desiring to engage in the practice of optometry must be over 21 years of age and of good moral character and possess certain specified educational qualifications, pass an examination before the state board of optometry appointed by the Governor, and obtain from such board a certificate of registration. The qualifications of an optometrist, as thus outlined, of course exclude a corporation from the practice. It cannot qualify and cannot obtain a certificate of registration. It is not of the class of persons the legislature intended to authorize to practice optometry. It does not possess the necessary moral and intellectual qualities.

Dentistry and optometry both belong to the healing arts, and the reason for regulating one is equally applicable to the other. The following observations might as well have been made of optometry:

"The practice of dentistry under the name of a corporation not licensed and not entitled to a license for such purpose is unlawful. 'Dentistry is a profession having to do with public health, and so is subject to regulation by the state. The purpose of regulation is to protect the public from ignorance, unskillfulness, unscrupulousness, deception, and fraud. To that end the states requires that the relation of the dental practitioner to his patients and patrons must be personal.' *Winslow* v. *Board of Dental Examiners,* 115 Kan. 450, 223 Pac. 308, 309." *State Board of Dental Examiners* v. *Savelle,* 90 Colo. 177, 8 Pac. (2d) 693, 697, 82 A. L. R. 1176.

So, also, the following statement:

"The practice of dentistry is not open to commercial exploitation. Such would be its fate if the

methods adopted by petitioner should become general. That a corporation may not engage in the practice of the law, medicine, or dentistry is a settled question in this state. None of those professions which involves a relationship of a personal as well as a professional character, which has to do with personal privacy, can be placed in the same category as druggists, architects, or other vocations where no such relationship exists." *Painless Parker* v. *Board of Dental Examiners,* 216 Cal. 285, 14 Pac. (2d) 67, 72.

See, also, *People* v. *People's Stock Yards State Bank,* 344 Ill. 462, 176 N. E. 901. Also the following concerning the practice of optometry by a corporation:

"The defendant company could not conduct a business without a license. It could not obtain a license, and we can conceive of no reason why it should be permitted to continue to conduct a business under the license of an optometrist. . . .

"It is admitted by the defendant that the state has a right to require the licensing of optometrists and has the right to exclude any individual from practicing such profession unless he has met the statutory qualifications and obtained a license from the state. There can be no question but what the state has such right under the police power. And statutes in this and other states requiring certain qualifications and the procurement of licenses by members of the learned professions have been universally held constitutional. [Citing cases.]" *State* v. *Kindy Optical Company,* 216 Iowa 1157, 248 N. W. 332, 335.

The defendant, therefore, when it employs a registered optometrist, as a part of its business, to examine the eye for defects and to prescribe glasses to correct such defects, is violating the law regulating optometry.

The law fixes no punishment for those who violate it by engaging in the practice of optometry without passing the examination and obtaining a certifi-

cate of registration. Such conduct is not denounced as a crime. The ordinary criminal sanctions, such as fine or imprisonment or both, for violating the law are not prescribed. There is available no remedy to prevent unregistered persons or corporations from practicing the profession, unless it be injunction. The standards of the profession may become those of the ordinary commercial transaction, and persons with defective or failing eyesight left to abide the rule of *caveat emptor,* and both the government and those directly interested are helpless to do anything to stop or correct it.

■ The law should be obeyed. A violation of it is a wrong to the state as also to any person or persons especially injured thereby. One of the maxims of the law is that there is no wrong without a remedy. It is shocking to the commonest understanding to concede the purpose of the law cannot be realized for the lack of a remedy. It presents the picture of the sovereign state making a law but being unable to enforce it. Such a happening the courts try very hard to avoid. The civil process of injunction, as a rule, may not be used to prevent persons from committing crime, but where the crime is a public nuisance, or affects the interests of the state, or those entitled to protection against its commission, injunction will lie. *State* v. *Smith,* 43 Ariz. 131, 343, 29 Pac. (2d) 718, 31 Pac. (2d) 102, 92 A. L. R. 168, 173. Two reasons are assigned for not using the writ of injunction to prevent persons from committing crime; one being that to do so deprives the accused of the benefit of a jury trial, and the other, that the penalties of the criminal law are a sufficiently adequate remedy or protection. These reasons have no application here, since the violation of the optometry law is not punishable as a crime.

We believe that most every state in the Union has laws requiring persons who desire to practice law, or medicine, or dentistry to pass an examination as to their qualifications and to obtain a license, and the tendency of the courts is to grant injunctions to prevent unlicensed persons from practicing those professions. Some of the most recent decisions upholding the power of the courts to enjoin unlicensed practice of these professions are *Dworken* v. *Apartment House Owners Assn. of Cleveland,* 38 Ohio App. 265, 176 N. E. 577; *Land Title Abstract & Trust Co.* v. *Dworken,* 129 Ohio St. 23, 193 N. E. 650; *Unger* v. *Landlords' Management Corporation,* 114 N. J. Eq. 68, 168 Atl. 229; *Childs* v. *Smeltzer,* 315 Pa. 9, 171 Atl. 883; *Sloan* v. *Mitchell,* 113 W. Va. 506, 168 S. E. 800; *State* v. *Retail Credit Men's Assn.,* 163 Tenn. 450, 43 S. W. (2d) 918; *Paul* v. *Stanley,* 168 Wash. 371, 12 Pac. (2d) 401; *Depew* v. *Wichita Retail Credit Assn.,* 141 Kan. 481, 42 Pac. (2d) 214; *Fitchette* v. *Taylor,* 191 Minn. 582, 254 N. W. 910, 911, 94 A. L. R. 356. In this last case the court commented on the right to enjoin an unlicensed attorney from practicing law as follows:

"It is not a single act that is complained of. It is a series of doings amounting to a well-settled custom which defendant would continue if he were not enjoined. That such a course of conduct would be unlawful is obvious. While the traditional office of an injunction is the protection of property or rights of property, there is a noticeable absence of judicial attempt so to enumerate the subjects of the remedy or delimit its field as to hamper the power of equity to grant injunctional relief where obviously it is needed in the interest of justice. The thought of the courts has been 'that it is impossible to foresee all the exigencies of society which may require their aid and assistance to protect rights or redress wrongs. . . . Interposition by restraining order is a matter of

growth and keeps pace with advancing civilization'
so that the courts are continually and properly find-
ing new subjects for injunctional relief. 14 R. C. L.
365.'' See, also, 32 C. J. 34, § 13.

In the Law of Injunctions, by Lewis & Spelling, § 3,
pages 2 and 3, it is said:

''In numerous judicial opinions are to be found
recognitions of the expansion which has been found
necessary in the use of injunctive processes to keep
step with the onward march of civilization and meet
man's manifold needs. Mr. Justice BREWER, while
sitting in the Circuit Court of Nebraska, in an un-
reported case, expressed a view which has been often
quoted, that 'the powers of a court of equity are as
vast, and its processes and procedure as elastic as
all the changing emergencies of increasingly complex
business relations and the protection of rights can
command.' . . .

''That the remedy by injunction has become more
common and therefore more prominent in modern
or recent times is doubtless true, and this grows out
of the ever changing conditions and evolutions in
business incident to modern civilization. That the
courts adapt themselves to these changing conditions
and afford relief, thus preserving the rights of the
individual citizen from combinations of the many, is
a tribute to the conservatism and wisdom of both
bench and bar.''

In the above cases the actions were brought by
members of the medical, dental, or legal professions
in behalf of their class, or by representative associa-
tions of such professions, on the theory that licensed
persons have an interest in the nature of a property
right in the practice of their professions, such as will
support their authority to proceed as proper parties
to enjoin the practice by a corporation or unlicensed
person. So, if the present action were brought by
the state board of optometry, or by members of the
optometry profession, there would be no question of

their right to maintain the suit, under the reasoning of the foregoing cases. The action, however, is brought by the state, on the relation of the Attorney General, and, while those cases are authority that injunction will lie to restrain an unlicensed person from practicing optometry, they are not authority that the action may be maintained by the state.

There seems to be very good reason for invoking the rule laid down by the Supreme Court in the case of *In re Debs,* 158 U. S. 564, 15 Sup. Ct. 900, 906, 39 L. Ed. 1092, wherein it is said:

"Every government, intrusted by the very terms of its being with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts *that it has no pecuniary interest in the matter.* The obligation which it is under to promote the interest of all and to prevent the wrongdoing of one, resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court." (Italics ours.)

The optometry law is one passed for the general welfare of the people of the state. Its purpose is to protect the health of the state's inhabitants, and, while the state may not have any pecuniary interest in the enforcement of the law, it has a very much higher interest, and that is the protection of the health and well-being of its people.

A zoning ordinance was passed by the city of Stockton without declaring that a violation of its terms would constitute a crime or be punishable by fine or imprisonment. The question was as to whether a violation of this ordinance could be enjoined at the action of the city, and the court there, after quoting

from the Debs case, *supra,* and others drew this general conclusion:

"But it is too clear, both upon principle and the authorities, of which many are above named, to require further discussion, that where the personal welfare and the property rights of a large number of the inhabitants of a city or town would be detrimentally affected by a violation of a police or sanitary regulation, whether the ordinance provides other means for its enforcement or not, such city or town may itself appeal to a court of equity by means of the forceful and singularly effective writ of injunction (preventive, if the violation is merely threatened or attempted; mandatory, if the violation has already occurred) to restrain such violation or to cause the wrongful effect thereof to be removed." *City of Stockton* v. *Frisbie & Latta,* 93 Cal. App. 277, 270 Pac. 270, 276.

In *Bobbitt* v. *State Highway Com.,* 138 Kan. 487, 26 Pac. (2d) 1115, 1116, the court quoted from *Home Riverside Coal Mines Co.* v. *McAuliffe,* 126 Kan. 347, 267 Pac. 996, the following,

"Early in the history of this state it was determined that: ' . . . For wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character. . . . ' *Craft* v. *Jackson County Commrs.,* 5 Kan. 518, 521; and see *Clark* v. *George,* 118 Kan. 667, 669, 236 Pac. 643. This principle applies not only in injunction, but in *mandamus* (*Bobbett* v. *State ex rel. Dresher,* 10 Kan. 9; *Collingwood* v. *Schmidt,* 125 Kan. 81, 262 Pac. 556) and other forms of action, many examples of which are found in our reports," and approved the same as a correct statement of the law.

In *Depew* v. *Wichita Retail Credit Association, supra,* it was insisted by the defendant the action should have been prosecuted in the name of the state instead of licensed members of the bar, and as we read the decision of the court its ruling, in effect, was

not that the action could not have been maintained by the state, but that the licensed attorneys, under the showing, were proper parties to bring the action. The dissenting opinion in the case was based solely on the ground that the action should have been brought by the state, on the relation of the county attorney or the Attorney General. The majority opinion did not overrule the court's decision in *Coffeyville Mining & Gas Co.* v. *Citizens' Natural Gas & Mining Co.*, 55 Kan. 173, 40 Pac. 326, 328, wherein it was said:

"A private person or corporation will not be recognized in a court of justice as the guardian of purely public interests, nor to further its private ends by assuming that character."

It seems to us that, since the regulation of optometry by the state is the exercise of the police power for the health and general welfare of the people of the state, and since a violation of such statutory regulation is not made a criminal offense, the state, acting through the Attorney General, may ask the courts to exercise their equity powers to enjoin such violations.

In the Smith case, *supra*, we held that the state, at the relation of the Attorney General, was a proper party plaintiff, and that injunction should issue restraining Smith from the practice of medicine and surgery if the allegations of his incompetency were sustained by proof. In that case we also said the writ of injunction would not be employed for the sole purpose of preventing persons from committing a crime.

In the present case, there is no crime involved; the only question being the right of the state to invoke the civil process of injunction to prevent the defendant corporation from violating a health law of the state.

We think the complaint states a good cause of action, and that the plea in bar and the demurrer were properly overruled.

The plea in bar undertakes to set up some kind of agreement between the state board of optometry and R. W. Patterson, the licensed optometrist, who, according to the complaint, is an employee of the defendant, examining the eyes of those seeking aid and prescribing therefor, whereby the board agreed that said Patterson might render such services for a limited length of time. This agreement of course would not have the effect of suspending the law. At all events, it did not purport to agree that the defendant should practice optometry, and, if it had, the agreement would have been void.

An examination of the record shows that the allegations of the complaint, to the effect that defendant Funk Jewelry Company was engaged in the practice of optometry, are well supported by the evidence. It appears therefrom that the defendant is a corporation, and that it has in its employ one R. W. Patterson, a registered optometrist, who examines people for weak and defective eyes and prescribes glasses to correct the sight, and who is paid by the defendant for such services.

We think the judgment should be affirmed, and it is so ordered.

McALISTER, J., concurs.

LOCKWOOD, C. J., dissents.