No. 45,413

Willis W. Wall, *Plaintiff-Appellee*, v. Virginia Lee Harrison, Election Commissioner of Sedgwick County, Kansas, Defendant, Keith Sanborn, County Attorney of Sedgwick County, Kansas, *Intervenor-Appellant.*

(443 P. 2d 266)

Opinion filed July 13, 1968.

*Charles E. Jones,* of Wichita, argued the cause and *Mark H. Adams, William I. Robinson, J. Ashford Manka, Clifford L. Malone, Mark H. Adams, II, John S. Seeber, Floyd E. Jensen, Philip L. Bowman, Robert Hall* and *Joe Rolston,* all of Wichita, were with him on the brief for appellant.

*E. Lael Alkire,* of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: This appeal is from an order directing a writ of mandamus be issued commanding the election commissioner in Sedgwick county to include the office of county attorney among those county offices to be filled by the primary and general elections of 1968.

The hearing on appeal was advanced at the request of all parties because the June 20 filing deadline for candidates was approaching. An interim opinion was issued on June 17 affirming the judgment of

the lower court and it appears as *Wall v. Harrison*, 201 Kan. 598, 443 P. 2d 266. The rationale behind the interim opinion is set forth herein.

The facts giving rise to the controversy will be stated briefly. The 1965 legislature amended the statute which provides the offices of the county attorneys. (K. S. A. 19-701.) The statute as amended reads:

"A county attorney shall be elected in each county organized for judicial purposes, who shall hold his office for a term of two (2) years, except as herein otherwise provided, who shall, before he enters upon the duties of his office, execute a good and sufficient corporate surety bond to the state of Kansas issued by a company authorized to do business in the state in a sum of not less than two thousand dollars ($2,000), to be fixed by the board of county commissioners, which bond shall be conditioned for the faithful performance of his duties as such officer, and that he will pay over to the county treasurer, in the manner prescribed by law, all moneys which shall come into his hands by virtue of his office; and he shall deposit such bond in the office of the county clerk: *Provided,* no person shall be eligible for the nomination or election to the office of county attorney of any county unless such person shall have been regularly admitted to practice law within the state of Kansas, and is at the time of his nomination and election a regularly qualified practicing attorney under said laws. In counties having a population of more than three hundred thousand (300,000) the county attorney shall be elected, commencing with the general election in 1966, and shall hold his office for a term of four (4) years." (Laws of 1965, ch. 163, sec. 2, now K. S. A. 1967 Supp. 19-701.)

The portions of the act which are underlined relate to Sedgwick county which has a population of over 300,000.

Keith Sanborn, intervenor-appellant, was elected county attorney in Sedgwick county at the 1966 general election. By virtue of his election under the above law he claims the right to a four year term ending in 1971.

On May 28, 1968, Willis W. Wall, the plaintiff-appellee, attempted to declare his candidacy for county attorney of Sedgwick county at the ensuing 1968 election and was refused permission by the election commissioner. The election commissioner in Sedgwick county is Virginia Lee Harrison. Mr. Wall then filed a petition for writ of mandamus in the district court. Mr. Sanborn, the incumbent county attorney, intervened in the action and took over the defense since he was the person directly affected. As a result of the action a writ was issued by the district court and this appeal followed.

The district court in granting the writ held, (1) Article 4, Section 2 of the Constitution of the State of Kansas limits the term of county officers (except county commissioners) to two years, (2) the county

attorney of Sedgwick county is a county officer and (3) the provision in the 1965 law for a four year term is unconstitutional and void.

We agree with that decision.

Article 4, Section 2 of the constitution reads:

"General elections and township elections shall be held biennially on the Tuesday succeeding the first Monday in November in the years bearing even numbers. All county and township officers shall hold their offices for a term of two years and until their successors are qualified: . . ."

At this point it might be well to set forth Article 9 of the constitution which relates to county organization and county officers. This article provides:

"§1. The legislature shall provide for organizing new counties, locating county seats, and changing county lines; but no county seat shall be changed without the consent of a majority of the electors of the county; nor any county organized, nor the lines of any county changed so as to include an area of less than four hundred and thirty-two square miles.

"§2. The legislature shall provide for such county and township officers as may be necessary."

The intervenor-appellant contends the county attorney of Sedgwick county is not a county officer as referred to above and that the controlling portions of the constitution are found in Article 15. Those portions are as follows:

"§ 1. All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law.

"§ 2. The tenure of any office not herein provided for may be declared by law; when not so declared, such office shall be held during the pleasure of the authority making appointment, but the legislature shall not create any office the tenure of which shall be longer than four years, . . ."

In support of his position appellant has traced the history of the office of county attorney in Kansas, as it appears in our session laws, from the time the Territory of Kansas was organized. He points out the office, which existed at the time of statehood, was abolished and superceded by the office of district attorney in 1861. (Laws of 1861, ch. 2.) Then in 1864 the legislature abolished the office of district attorney and provided for the election of county attorneys as they generally have been elected up to the present time. (Laws of 1864, ch. 31; see also *Craft v. State*, 3 Kan. 447 [2d Ed.].)

The thrust of his argument is that the duties performed and the master served by the county attorney in Sedgwick county makes him a district officer, a public prosecutor, of a judicial district coterminous with Sedgwick county.

Before we examine this contention, pertinent rules to aid in the proper construction of the constitution and the statutes should be stated.

One of these rules is found in syllabus ¶ 2 of *Higgins v. Cardinal Manufacturing Co.,* 188 Kan. 11, 360 P. 2d 456. It reads:

"A constitution must be interpreted liberally to carry into effect the principles of government which it embodies. It deals broadly with general subjects and its language should not be interpreted in any narrow, refined or subtle sense, but should be held to mean what the words imply to the common understanding of men. In ascertaining the meaning of a constitutional provision courts consider the circumstances attending its adoption and what appears to have been the understanding of the people when they adopted it."

In *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P. 2d 537, it is said:

"Constitutionality of a statute is presumed, doubts as to its constitutionality are resolved in favor of legality, and before a statute may be stricken down it must clearly appear it offends applicable constitutional provisions. (Syl. ¶ 1.)

"In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. (Syl. ¶ 2.)"

The state constitution limits rather than confers powers, and hence must be examined to see what it prohibits instead of what it authorizes. (*State, ex rel., v. Anderson,* 180 Kan. 120, 299 P. 2d 1078; *Schumacher v. Rausch,* 190 Kan. 239, 372 P. 2d 1005.)

It is fundamental that the written constitution is paramount law since it emanates direct from the people. (*Atkinson v. Woodmansee,* 68 Kan. 71, 74 Pac. 640.)

We return to the question involved.

The office of county attorney is not created by the Constitution of the State of Kansas, for the constitution contains no mention of that office. It was created and has been provided by legislative act. (See *In re Gilson, Petitioner,* 34 Kan. 641, 9 Pac. 763.) Whether the office is a "county office" as that term is used in our constitution depends upon the intention of the makers and adopters of the constitution, for their intention is the polestar in the construction of the constitution. (*Hunt v. Eddy,* 150 Kan. 1, 90 P. 2d 747.)

The present act under consideration (ch. 163, sec. 2, Laws of 1965, now K. S. A. 1967 Supp. 19-701 directs a county attorney be elected in each county organized for judicial purposes. There are 105 counties and one county attorney is elected in each of these counties. Historically the office of county attorney has been considered and widely accepted as one of the "county offices."

The present election law, Laws of 1968, ch. 406, sec. 59, amending K. S. A. 25-101, provides for *county elections in each even-numbered year* and directs:

". . . at each election there shall be elected, *in each county*, a county clerk, county treasurer, register of deeds, *county attorney*, probate judge, sheriff, and in counties that may by law be entitled to elect such officers, a county assessor and a county surveyor, also in each county a clerk of the district court and such other officers as may now or hereafter be provided by law; . . ." (Emphasis supplied.)

The wording of ch. 163, sec. 2, Laws of 1965, which amended K. S. A. 19-701, gives no indication that the nature and substance of the office of county attorney was to be changed thereby. No office was abolished and no office was newly created. It is true section one of the act, which amended K. S. A. 28-604, prohibited the county attorneys in certain populous counties from engaging in private law practice. However, such a restriction does not change the nature or substance of the duties of the office. To compensate for such restriction on outside practice a substantial increase in salary was provided.

What officers would be considered as county officers by those who drafted Article 4, Section 2 of the constitution? In part at least the answer lies in the purposes and functions of the counties organized as provided in Article 9, Section 1. The authors of the constitution recognized a need for separate geographical units of local government. In Article 9, Section 2 they made provision for the legislature to provide "for such county and township officers as may be necessary."

The term "county officer" is generally applied to officers whose territorial jurisdiction is the county and by whom the county performs its usual and necessary political functions. (See 20 C. J. S., Counties, § 100, p. 888.)

We therefore hold the office of county attorney is a county office. These offices were originally created for the purpose of assisting the counties in carrying out their usual and necessary political functions. The county attorneys are elected by the voters of their respective counties; they are paid from funds levied and collected by their counties; their territorial jurisdiction is limited generally to their counties (*State, ex rel., v. State Highway Comm.*, 133 Kan. 357, 299 Pac. 955); by common usage and custom they have been considered and referred to as county officers. (See K. S. A. 19-705); and various legislatures by common practice have passed laws

relating to this office under titles referring generally to counties and county officers. (See Laws 1965, ch. 160.)

Although the extent and nature of the duties of the county attorney in Sedgwick county may be somewhat different from the duties of county attorneys in smaller counties, yet the nature of those duties and the master served remains substantially the same. The fact Sedgwick county comprises a single judicial district has no special significance. There are thirteen other counties in Kansas similarly situated.

The county attorney of Sedgwick county is a "county officer." Article 4, Section 2 of the Constitution of the State of Kansas limits the term of all county and township officers, except county commissioners, to two years and until their successors are qualified. That provision in K. S. A. 1967 Supp. 19-701 which purports to extend the term of the county attorney to four years in those counties having a population of more than 300,000 contravenes a constitutional limitation and is void.

In view of this conclusion the question of severability arises. What effect does this constitutional infirmity have upon the statute as a whole? The test of severability frequently applied is whether the legislature would have eliminated the offending portion of the act, if advised of the infirmity, and would have enacted the measure absent the offending portion. (*State, ex rel., v. Wyandotte County Comm'rs*, 140 Kan. 744, 39 P. 2d 286; *Felton Truck Line v. State Board of Tax Appeals*, 183 Kan. 287, 327 P. 2d 836.)

The offending portion of the act is limited to the last sentence of sec. 2, ch. 163, Laws 1965 (K. S. A. 1967 Supp. 19-701). Striking the objectionable sentence does no violence to the balance of the act. The constitutional part can stand alone as a complete expression of the intention of the legislature. It will stand identical in wording to the preceding law on this subject, ch. 160, sec. 3, Laws 1965, which law was passed and later repealed by the same legislature which enacted the one under consideration.

One last matter deserves comment. Appellant contends the remedy of mandamus is not a proper remedy to determine the constitutionality of the statute and appellee is not the proper party to bring the action. In *Mobil Oil Corporation v. McHenry*, 200 Kan. 211, 436 P. 2d 982, this court said:

"Mandamus is a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of

public officials in their administration of the public business, notwithstanding the fact there also exists an adequate remedy at law." (Syl. ¶ 12.)

"While mandamus will not ordinarily lie at the instance of a private citizen to compel the performance of a public duty, it has been held where an individual shows an injury or interest specific and peculiar to himself, and not one that he shares with the community in general, the remedy of mandamus and the other extraordinary remedies are available." (Syl. ¶ 17.

(See also *In re Insurance Tax Cases*, 160 Kan. 300, 161 P. 2d 726.)

Under the facts and circumstances of this case mandamus was a proper remedy.

Other matters of a procedural nature have been raised but in view of our ultimate decision in the case further comment would serve no useful purpose.

The judgment is affirmed.