State, *ex rel.,* v. Bradbury.

No. 27,346.

THE STATE OF KANSAS, ex rel. CHARLES B. GRIFFITH, Attorney-general, and PAYNE H. RATNER, County Attorney of Labette County, *Plaintiff,* v. W. W. BRADBURY, RAYMOND CAMPBELL, C. N. PETTY, C. L. ARMSTRONG, R. F. RILEY, J. U. DICKERSON, ARTHUR O. PHELPS, as Members of the Board of Trustees of The Labette County Community High-school District, *Defendants.*

### SYLLABUS BY THE COURT.

1. MANDAMUS—*Nature of Writ—Public Officers Not Compelled to Bring Action Against Themselves.* Mandamus is a discretionary writ and it will not issue to compel a board of high-school trustees to commence an action in their official capacity against themselves individually to recover funds of the district unlawfully expended by them to purchase and operate busses to transport pupils of the district to and from school—there being statutory authority for the bringing of a civil action in the name of the state on the relation of the county attorney for the recovery of the funds, in which action the important desideratum of adverse parties will be supplied without which the orderly procedure for the administration of justice between litigants cannot be assured.

2. SCHOOLS—*Disqualification of Board to Bring Action—Action in Name of State.* Where an official board is disqualified by interest or other sufficient circumstance from maintaining an action of public concern which it would otherwise be their duty to bring, such action may be brought on the relation of the county attorney in the name of the state under authority of R. S. 19-702.

Original proceeding in mandamus. Opinion filed May 7, 1927. Writ denied.

*William A. Smith,* attorney-general, *L. E. Goodrich* and *Payne H. Ratner,* both of Parsons, for the plaintiff.

*E. C. Clark,* of Oswego, and *E. L. Burton,* of Parsons, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: The state asks this court to compel the defendants, who constitute the board of trustees of the Labette county community high-school district, to bring an action in their official capacity against themselves individually to recover a considerable amount of the public funds of the district which defendants unlawfully expended in the purchase and operation of three motor busses

District and Prosecuting Attorneys, 18 C. J. pp. 1306 n. 48, 1307 n. 49. Mandamus, 38 C. J. pp. 547 n. 86, 558 n. 74, 590 n. 37, 692 n. 15, 695 n. 50 new. Municipal Corporations, 28 Cyc. pp. 1732 n. 99, 1733 n. 8. Schools and School Districts, 35 Cyc. pp. 833 n. 87 new, 899 n. 13, 967 n. 29, 970 n. 67, 1049 n. 95.

to carry the pupils of the district to and from school. This action is more or less sequential to *State, ex rel., v. Cruzan,* 120 Kan. 316, 243 Pac. 329, where this court affirmed a judgment enjoining these defendants from the expenditure of the school district's funds for such purposes.

While that decision put a stop to such use of the district's funds, it could not directly undo what had already been unlawfully done. Busses had been bought and paid for with the district's money. Further expenditures had been made to operate the busses.

To the alternative writ issued herein defendants make separate answers and returns, in substance as follows:

That in the purchase and operation of the busses to transport pupils to and from school, defendants saved $4,968 which would otherwise have had to be expended for tuition for pupils belonging to this district who would have attended other schools; that of the $4,600 which the busses cost, $900 came out of an unofficial fund known as the "Activities fund" derived from miscellaneous sources— football, basketball, profits on sales of "annuals," musical and lyceum courses and the like, and which had been donated by those concerned therewith toward the purchase of the busses, leaving the net cost of the busses to the taxpayers at the sum of $3,700; and that the cost of operating the busses was $2,962.28; that after the temporary injunction was issued by the district court—*State, ex rel., v. Cruzan,* supra—certain of the patrons of the district being desirous that their children should attend the Labette county community high-school, organized "The Farmers Coöperative Education Association" for the purpose of taking over the busses and operating them at their own expense, and accordingly the defendants, after consulting with the county attorney, sold the busses to that association for $3,450, of which sum $500 was paid into the district treasury in cash and the balance, $2,950, in the form of a promissory note bearing 6 per cent interest, and which the district now holds and which is worth its full face value in cash. The answer of the defendant Bradbury, which is typical, continues—

"Thus said district received and retained the benefits of the tuition saved in the sum of $4,558.50; cash $500 and note $2,950 from the sale of busses, making a total benefit received and retained by the district in the sum of $8,008.50 while the outlay of public funds was but $6,662.28 or an actual profit to the district in the sum of $1,346.22 by reason of the purchase and operation of the busses."

Other matters pleaded in the answer are of little significance—that the county superintendent, Eva E. Cruzan, *ex officio* president of the board of trustees, never voted to buy the busses or expend public funds to operate them; that the attorney-general's advice was sought concerning the power of the defendants to buy and pay for the busses, but that his advice was not forthcoming until too late to guide these defendants; and that in the sale of the busses defendants consulted the county attorney, who told them he did not care what they did so long as they showed him a receipt from the district treasurer showing that the funds expended without authority of law had been returned to the school-district treasury—

"And this defendant further says that he acted in good faith in the belief that the law did not forbid the board from purchasing and operating these busses, and after a canvass of the entire district and a report from the committees that the taxpayers and patrons of the district desired the purchase and operation of the busses, and with the honest belief that it was a good business proposition and would save money to the district, which it proved to do, and with the further thought that it would enable several pupils in the district to attend high school that could not otherwise attend any high school."

Against the several answers of defendants the state filed a demurrer and a motion to quash, and the matters thus raised have been pressed on our attention in oral argument and in printed briefs.

Touching the principal matters specially pleaded in defendants' answers—the alleged saving of the district's funds by the purchase and operation of the busses to carry to and from school the pupils who lived at a considerable distance therefrom rather than pay their tuition in other more convenient districts, and the taking of an interest-bearing promissory note for the deferred payments on the busses when they were sold—this court is constrained to hold that these matters are altogether insufficient to excuse the defendants from some proper and effective action to get back into the school treasury the moneys heretofore unlawfully expended. If the cost of paying tuition of some of the district pupils attending school in other districts is a lawful charge on the funds of the Labette county community high-school district and is more than it would cost to furnish transportation for such pupils to and from school in their own district, that is a matter which the legislature could and probably would correct if the fact were called to its attention. Legislative sanction has been given to expenditure for such transportation in common-

school districts. (R. S. 72-601; *State, ex rel., v. Cruzan,* supra.) However, we have to deal with the law as it is, not as it might be.

This court disapproves the suggestion of counsel that the defendant board of trustees does not have power to bring an action to recover moneys wrongfully paid out of the district treasury. Since it was defendants' duty to care for and conserve the funds of the district and devote them only to lawful uses, the duty to recover such funds which they have disbursed without legal authority is a necessary corollary thereto. On this topic this court has said:

"While the powers of a public officer or board are those and those only which the law confers, yet when the law does confer a power or prescribe a duty to be performed or exercised by a public officer, the powers granted and duties prescribed carry with them by necessary implication such incidents of authority as are necessary for the effectual exercise of the powers conferred and duties imposed." (*State, ex rel., v. Younkin,* 108 Kan. 634, 638, 196 Pac. 620.)

Still less consequential are the other matters pleaded in the answers and suggested in defendants' brief. The fact that the county superintendent did not vote to buy the busses would not necessarily excuse her from any duty devolving on her as *ex officio* chairman of the board of trustees to set about the task of recovering or recouping the moneys unlawfully expended. Neither would the advice or acquiescence of the county attorney in what the defendants in their official capacity did or failed to do have any effect upon their duty. It is suggested that one trustee, Dickerson, voted against the allowance of some of the expenditures for busses or their operation. Even that would not excuse him from doing his part to recover the funds, and indeed counsel for the litigants are not able to agree on whether or not Dickerson was opposed to the purchase of the busses, although it seems to be conceded that he voted against some of the unlawful disbursements for the busses. Touching the concluding allegation in Bradbury's answer: that what he did was in the best of faith, that he did it after consultation with his constituents in the belief that it was not unlawful, and in the honest belief that it was a good business proposition and would save the taxpayers' money—this special pleading might serve him well if he were being subjected to ouster proceedings for official misconduct (*State, ex rel., v. Foley,* 107 Kan. 608, 193 Pac. 361; *State, ex rel., v. Wilson,* 108 Kan. 641, 196 Pac. 758), or if the question were whether contribution could be enforced between defendants for the misapplication of the district's funds (*Farney v. Hauser,* 109 Kan. 75, 80, 198 Pac. 178). But such special

State, *ex rel.,* v. Bradbury.

pleading is no excuse for the nonperformance of defendant's duty to recover the district moneys unlawfully expended, once that duty has been made plain to him, as was manifestly the case when the Cruzan case, *supra,* was concluded. (*Russell v. Tate,* 52 Ark. 541, 7 L. R. A. 180, 20 A. S. R. 193; *Frost & others v. Inhabitants of Belmont & others,* 88 Mass. 152; *People of the State of N. Y. v. Fields,* 58 N. Y. 491; *Att. General v. the Mayor, &c., of Dublin,* 1 Bligh. N. R. 312; *The Attorney General v. Wilson,* 1 Craig & Ph. 1; *Blaikie v. Staples,* 13 Grant. Ch. [Canada] 67; 4 Dillon, Municipal Corporations, 5th ed., § 1577 *et seq.*)

Ordinarily where a clear legal duty rests upon a public officer or board of public officers which he or they neglect or refuse to perform, mandamus to compel the performance of that duty is the ancient, sure, familiar remedy to correct such delinquency. And we would not hesitate to issue it in this case if it were not for the peculiar situation here presented. If it were merely to order the defendants to go hire a lawyer and sue whatever third parties were responsible for the loss of this money, and see to it that these defendants gave their attorney their moral support and counsel together with what evidence they could supply, and whatever evidence they could with diligence glean and lay before him for proper presentation in a court of law to win that lawsuit—our writ would issue as a matter of course. But what we are asked to do is to order these defendants to sue themselves. As plaintiffs suing in their official capacity, they would be in duty bound to strive in good faith to prevail. As defendants, in their individual capacity, not unnaturally and quite within their personal and constitutional rights, from Magna Charta and on down through the centuries, they would naturally make the best fight they could to prevail. The due administration of justice in courts of law ordinarily requires adverse parties. The task now sought to be imposed on defendants calls for an attitude of fairness between their official zeal and their personal interest altogether too rare for practical purposes. Indeed, the bare suggestion that these defendants be compelled to sue themselves has something about it which savors of the grotesque and bizarre. If a peremptory writ should issue in this case, should we follow it with the appointment of a commissioner or censor to take note of the display of zeal these trustees may manifest to prosecute successfully the suggested action against themselves?

Mandamus is a discretionary writ. It should not issue under such

circumstances unless the wrong needing redress is very grievous and no other remedy is available. We think there is a much simpler method of procedure available to set this matter to rights. How came the expenditure of the district funds for busses and their operation to be questioned in the first place? The county attorney as relator brought an action in the name of the state. By what authority? By authority of a .simple and all-inclusive statute (R. S. 19-702, which has been in our law books since 1868 and traceable without material change back to 1861; Comp. Laws, 1862, ch. 16, p. 105). It reads:

"It shall be the duty of the county attorney to appear in the several courts of their respective counties and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested."

The powers granted and duties thus imposed on the county attorney have been exercised and performed times without number, to prevent or terminate unauthorized acts of public officers. Typical cases are: *State v. Kansas City,* 60 Kan. 518, 525, 57 Pac. 118; *State v. Lawrence,* 80 Kan. 707, 103 Pac. 839; *State, ex rel., v. City of Lawrence,* 98 Kan. 808, 812, 160 Pac. 217; *State, ex rel., v. Linn County,* 113 Kan. 203, 213 Pac. 1062.

Usually the county attorney asserts the interest of the state by bringing injunction proceedings to prevent illegal action or by quo warranto to challenge the right of officials to do the acts he complains of. It does not appear that the public moneys of any subordinate division of the state, like a school district, have ever been sought to be recovered in this jurisdiction by such an action in the name of the state on the relation of its proper prosecuting officer, yet neither have we a precedent for the unique exercise of mandamus which is asked in the present case. However, there can be no difference in principle between an action by the state, *ex rel.,* to challenge the right of school-district officers to exercise some ungranted power or to enjoin them from further unlawful expenditure of public funds, and an action by the state by its official relator to recover the district funds already unlawfully expended, particularly in a situation where the district's officials are disqualified by personal interest from commencing and prosecuting such an action on their own official initiative with the requisite whole-hearted vigor to get results. Whether the case be to enjoin further unlawful expenditure of public funds or to recover those already unlawfully disbursed, the county at-

torney, in the name of the state, prosecutes "on behalf of the people" a civil action in which the state is interested in literal conformity with R. S. 19-702. In a very real sense a school district is a state institution, and when its funds are unlawfully disbursed the state is interested in their recovery, theoretically, just as much as in the prevention of further continuing unlawful expenditures. We have admitted that our own reports do not show a precedent for the sort of action we suggest. It is a complete answer, we think, that the necessity has not hitherto arisen to consider the comprehensive character of the statute which clothes the county attorney with power to act under such circumstances as those here disclosed. The case of *Kerby v. Clay County*, 71 Kan. 683, 81 Pac. 503, may seem at variance with what is here set down, but not when critically considered. In that case the county attorney brought an action in the name of the board of county commissioners to recover from a former county clerk certain moneys unlawfully allowed to him by the county commissioners. The commissioners did not authorize the action. And of course the county attorney had no right to sue in their official name without their sanction. But if the county attorney had brought an action in the name of the state with proper allegations charging a personal interest on the part of the county commissioners and their consequent disqualification or hostility to the taking of any steps looking to the recovery of the public moneys unlawfully expended, and if the attention of the court had been called to the broad and general grant of power and imposition of duty laid on the county attorney under R. S. 19-702, an altogether different result might have been reached. See, also, 28 Cyc. 1732, 1733, 1745; 35 Cyc. 1049-1052, 1056.

Under this expansive interpretation of this statute, it becomes unnecessary to examine into the common-law power of the attorney-general to bring such an action as the one here suggested.

In the discussion of this case we have treated the question of defendants' legal liability as if it were a foregone conclusion. It seemed proper to do so, but that question need not be regarded as *res judicata* absolutely in any other litigation which may yet have to be instituted. (*Benz v. Hines and Tarr*, 3 Kan. 390; *Hayes v. Insurance Co.*, 104 Kan. 230, 232, 178 Pac. 432; *Illinois Life Ins. Co. v. Young*, 118 Kan. 308, 317-320, 235 Pac. 101.) Nor does this court now commit itself on the question whether the expenditure of the

$900 of the unofficial "activities fund," if it was unofficial, gave rise to a cause of action of which the state has any right to complain.

While this opinion has already occupied much space, we ought not to conclude without noting the statement of council for defendants in oral argument that if the matters pleaded in defendants' answers do not constitute a complete defense the district funds will be restored without further litigation. This court approves such an attitude, and will be gratified to learn of such a consummation.

The writ is denied.