No. 28,783.

THE STATE OF KANSAS, ex rel. C. W. MITCHELL, County Attorney of Montgomery County, *Plaintiff*, v. THE CITY OF COFFEYVILLE, *Defendant*.

(274 Pac. 258.)

Opinion filed February 9, 1929.

*C. W. Mitchell,* county attorney, for the plaintiff; *A. A. Baker,* of Coffeyville, of counsel.

*Walter S. Keith,* city attorney, for the defendant; *Charles Bucher* and *Barney Bucher,* both of Coffeyville, of counsel.

The opinion of the court was delivered by

DAWSON, J.: This is an original proceeding in quo warranto to determine whether the city of Coffeyville may sublet its airport to a private individual and authorize him to operate it for the convenience of all aviators who choose to use it on reasonable terms, and to put the profits, if any, in his own pocket.

The statute under which the airport was acquired reads:

"That whenever in the opinion of the governing body in any city in the state of Kansas, the public safety, service and welfare can be advanced thereby, such governing body of such city may acquire by purchase or lease and maintain a municipal field for aviation purposes, and pay the expense of such purchase, lease or maintenance out of the general funds of the city. Such field may be used for the service of all aircraft and pilots desiring to use same." (R. S. 3-110.)

Pursuant to that authority, on February 14, 1928, the defendant city leased a convenient tract of 140 acres for a municipal airport. The lease term was five years and the rental was $1,000 per annum with an option to buy the land at $13,500, and there was an additional stipulation that if that option were exercised the rents paid would be credited on the purchase price.

On July 15, 1928, the city sublet its airport to one George L. Bennett, an aëronaut who practiced his profession under the name of the Bennett Flying School. The contract subletting the airport reads:

"LEASE OF AIRPORT.

"The city of Coffeyville, Kan., hereby leases to the Bennett Flying School, home office 223 West Twelfth street, Kansas City, Mo., for a period of five (5) years, the Coffeyville municipal airport.

"The city of Coffeyville agrees to, at its own expense, erect four (4) metal hangars upon the airport grounds, and to make the airport safe for daylight landing. Water and lights are likewise to be furnished by the city of Coffeyville without costs to the lessee.

"The lessee to pay fifty ($50) dollars per month to the city of Coffeyville for this lease on the field, including the four hangars, and five ($5) per month

for each additional hanger erected by the city. The payment of $50 shall commence at the time and when the hangars are, by the city of Coffeyville, on the municipal airport grounds erected.

"The Bennett Flying School promises to furnish one licensed ship and one licensed pilot, available at all times for local air transportation and cross-country flying.

"The Bennett Flying School promises to establish a branch of the Bennett Flying School on the said city airport, and the Bennett Flying School will have exclusive rights on the field for training aviators.

"The Bennett Flying School is to operate the field in accordance with the rules and regulations of the Department of Commerce as an open airport and the rules are hereby made a part of this contract.

"The Bennett Flying School agrees to make all charges not to exceed the average current prices for equal service in this locality, and these rates should prevail as a minimum by any other individual or company operating from the field.

"Any individual or company operating planes from the municipal airport, shall pay to the Bennett Flying School ten per cent (10%) on short passenger flights, and five per cent (5%) on cross-country flights when using the municipal airport as a base.

"The Bennett Flying School is to have the right and privilege of subleasing hangar space and furnish service and equipment on the field at all times. This is not an exclusive arrangement to prevent deliveries of supplies on the field, but only to give them the privilege of permanent service equipment on the field.

"It is hereby agreed that if at any time, for any cause, the Bennett Flying School fails to give service for aërial transportation for one week, that this lease is canceled and held for naught.

"The Bennett Flying School agrees to keep a man on the ground at all times, available as an instructor in aëronautics, and further agrees that the airplane that the Bennett Flying School will keep on this field be an airworthy craft and duly licensed.

"Both parties promise that they will do their utmost to carry into effect the terms of this contract in order to advance the science of aviation.

"Signed, by the contracting parties this the 10th day of July, 1928, at Coffeyville, and on the 10th day of July, 1928, at Kansas City, Mo.

"THE CITY OF COFFEYVILLE, KANSAS,
"By HARRY LANG, *Mayor*.
"THE BENNETT FLYING SCHOOL,
(Seal)                "By GEO. L. BENNETT.
"A. P. IRWIN, *City Clerk*."

In the state's petition the foregoing facts are pleaded at length. Various illegalities are alleged against the lease—the granting of exclusive rights over the entire airport to Bennett, and authorizing him to fix prices for the services of the airport and for the trans-

portation of passengers, and the want of corporate power on the part of the city to sublet its airport.

The city answered, in part, thus:

"That the governing body of defendant city, realizing the propriety and importance of providing and maintaining a municipal airport near to said city, and recognizing the danger to the public incident to its operation, therefore, and with the purpose and to the end of having, at all times, airworthy craft on said airport field, manned and under the efficient care of tried and practical aëronauts, acting under a single and undivided responsibility and management; and, having to that end, first assured itself of the good reputation, responsibility, learning and skill of Dr. Geo. L. Bennett, sole proprietor of the Bennett Flying School, in the art, science and practical operation of aërial transportation— . . . defendant further says that aviation is a pioneer, and in the experimental stage, in the field and business of transportation and travel, and is at the present time, at least, fraught with danger to person and property; . . . (4) And . . . defendant says that in entering into the aforesaid lease contract, it did so with no intention or purpose on its part to thereby divest itself, as a city of the first class, of its rightful power, as such municipal corporation, over said airport and its operation, nor . . . surrender its inherent and inalienable right to the supreme management and control and the supervisory care over the operation thereof for the public good."

It will readily be noted that the principal question here presented is whether the city has corporate power to sublet its municipal airport to a private individual. No such right is expressly conferred by statute. The pertinent rule for the proper construction of corporate powers of cities was first stated in the case of *The City of Leavenworth v. Rankin*, 2 Kan. 357.

"Municipal corporations are creations of the law and can exercise only powers conferred by law and take none by implication. In making contracts they must act within the limits and observe the regulations prescribed . . . Persons contracting with such corporations must inquire into their powers at their peril."

This rule is one of general application and has been applied many times to curb the exercise of powers not conferred upon official boards and governmental agencies. In *State, ex rel., v. City of Topeka*, 31 Kan. 452, 2 Pac. 593, it was said:

"Whenever a municipal corporation usurps any power which might be conferred upon it by the sovereign power of the state, but which has not been so conferred, such corporation may be ousted from the exercise of such power by a civil action in the nature of quo warranto in the supreme court. (*State v. Topeka*, 30 Kan. 653.)" (Syl. ¶ 3.)

Typical of many of our precedents to the same effect are: *State,*

*ex rel., v. Regents of the University,* 55 Kan. 389, 40 Pac. 656; *State, ex rel., v. Kaw Valley Drainage District,* 126 Kan. 43, 267 Pac. 31.

The fact that the unauthorized power which the official board or governmental agency assumes to exercise may be a good stroke of business will not justify it. On this point, in *State, ex rel., v. Bradbury,* 123 Kan. 495, 256 Pac. 149, where a school board sought to justify its unauthorized purchase of omnibuses to haul children to school rather than pay for their tuition in other schools more accessible, it was said:

"Touching the principal matters specially pleaded in defendant's answers—the alleged saving of the district's funds by the purchase and operation of the buses to carry to and from school the pupils who lived at a considerable distance therefrom rather than pay their tuition in other more convenient districts . . . If the cost of paying tuition of some of the district pupils attending school in other districts is a lawful charge on the funds of the Labette county community high-school district and is more than it would cost to furnish transportation for such pupils to and from school in their own district, that is a matter which the legislature could and probably would correct if the fact were called to its attention. Legislative sanction has been given to expenditure for such transportation in common-school districts. (R. S. 72-601; *State, ex rel., v. Cruzan,* supra.) However, we have to deal with the law as it is, not as it might be." (p. 497.)

There is no substantial analogy between this case and that of *Balley v. City of Topeka,* 97 Kan. 327, 154 Pac. 1014, where an exclusive concession in a small part of a large city park was granted, nor that of *State, ex rel., v. Dodge City,* 123 Kan. 316, 255 Pac. 387, where an inconsiderable part of a public park was set apart for the quite consistent purpose of a touring camp with the usual facilities pertaining thereto. The case of *Kansas City v. Wyandotte County,* 117 Kan. 141, 230 Pac. 79, is not sufficiently analogous to be helpful. Defendant cites the case of *O'Neal v. Harrison,* 96 Kan. 339, 150 Pac. 551, but in that case the grant of an exclusive franchise was authorized by statute. Our attention is called to the comprehensive language of R. S. 12-101, which declares that the cities of this state shall have power, among other matters, to make such orders concerning the real property of the municipality "as may be deemed conducive to the interests of the city, and to provide for the improvement, regulation and government of the same," and also—

"Fourth. To make all contracts and do all other acts in relation to the property and concerns of the city necessary to the exercise of its corporate or administrative powers.

"Sixth. To exercise such other and further powers as may be conferred by law."

This court, however, feels impelled to hold that neither the statute just quoted nor any other can by fair intendment be interpreted to confer upon the city of Coffeyville the corporate power to sublet its municipal airport, nor to confer upon a private individual as lessee of the city the exclusive privilege of managing the municipal airport for his private profit; and the fact that the lease contemplates that the lessee's charges must be reasonable and that the aviation services which he undertakes to furnish must be open to all aviators alike will not excuse the city's exercise of a corporate power for which there is no statutory authority.

Judgment for plaintiff.