No. 35,527

The State of Kansas, *ex rel.* James S. Lester, County Attorney of Jefferson County, *Appellee*, v. Ralph Baker, Lawrence Richardson et al., *Appellants*.

No. 35,528

The State of Kansas, *ex rel.* James S. Lester, County Attorney of Jefferson County, *Appellee*, v. Ralph Baker, H. L. Watchous et al., *Appellants*.

No. 35,529

The State of Kansas, *ex rel.* James S. Lester, County Attorney of Jefferson County, *Appellee*, v. Ralph Baker, O. J. Eidmann et al., *Appellants*.

(134 P. 2d 386)

Opinion filed March 6, 1943.

*Lee Bond,* of Leavenworth, argued the causes, and *Walter T. Chaney* and *Lawrence J. Richardson,* both of Topeka, were on the briefs for apellant Central Surety and Insurance Corporation; *Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, were on the briefs for appellant Maryland Casualty Company.

*A. C. Wilson,* acting county attorney, argued the causes for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Three separate actions were instituted by the state of Kansas on the relation of the county attorney of Jefferson county to recover moneys alleged to have been unlawfully paid by the county treasurer of Jefferson county pursuant to warrants drawn on the "special improvement fund" of the Stonehouse Drainage District Number One, of Jefferson county, rather than out of its general fund. The warrants involved in each case were duly signed by E. J. Sturm, president, attested by Kathryn Hoekstra, secretary, and countersigned by Ralph Baker, treasurer, all officers of the drainage district. Plaintiff prevailed and all defendants have appealed.

The defendants in the respective actions were the payees named in the separate warrants, to wit: Lawrence Richardson, H. L. Watchous, and O. J. Eidmann; the previously named officers and directors of the drainage district; the Maryland Casualty Company and the Central Surety and Insurance Corporation, sureties on the official bond of the treasurer of the district. The bond of the Maryland Casualty Company covered the period from March 1, 1939, to March 1, 1940. The bond of the Central Surety and Insurance Corporation covered the period from March 1, 1938, to March 1, 1941.

Separate demurrers were leveled against the petition in each case by all defendants on the same grounds, to wit: (1) The plaintiff had no legal capacity to sue and (2) the petition did not state facts sufficient to constitute a cause of action. The demurrer of the Maryland Casualty Company was sustained to the second cause of action in case number 35,529 and that ruling is not involved on appeal. As to all other causes of action in the three cases the demurrers were overruled. From those adverse rulings all defendants have appealed. The demurrers all raised the same legal questions and the appeals in the three cases have been consolidated.

The petitions in the respective actions disclosed the warrants involved were issued in payment of attorney's fees or engineering services, contracted by the officers and directors of the district. Copies of the various warrants and of the district treasurer's bonds were attached to and made a part of the petitions.

Only the petition in case number 35,527 has been abstracted. In addition to facts previously stated concerning matters which are common to all three actions, the petition in case number 35,527 contains in substance the following pertinent allegations: The drainage district at all times material to this action, was and is a legally existing municipal corporation, having been organized under chapter 24, article 4, of the General Statutes of Kansas for 1935; the funds of the district were deposited in the office of the county treasurer of Jefferson county as required by law; among such funds was a fund designated "special improvement fund," being proceeds from the sale of certain bonds which were issued for the construction of alleged improvements in the district; the officers and directors of the district, without authority and unlawfully, issued, drew and delivered to Lawrence Richardson a warrant on the "special improvement fund" of the district in the sum of $1,000 which was presented to, and was paid by, the county treasurer of Jefferson county on December 1, 1939; it was the duty of the officers and board of directors of the district to compensate attorneys employed by them out of the general fund of the district under the provisions of G. S. 1935, 24-428; no part of the proceeds derived from the sale of bonds by the district could lawfully be used for any other purpose than the payment of the costs of particular improvements for which the bonds were issued; the direction by the officers of the district to pay and the payment of attorney fees to Lawrence

Richardson by the county treasurer out of the "special improvement fund" violated the provisions of G. S. 1935, 24-428, and was without authority and unlawful; the amount of $1,000 thus unlawfully obtained by Lawrence Richardson should be repaid to the county treasurer together with interest from the date of payment on December 1, 1939, for the benefit of the "special improvement fund."

The petition in substance further alleged: At all times material to this action the defendants, E. J. Sturm, Ralph Baker and Kathryn Hoekstra, were the duly-elected, qualified and acting officers and board of directors of the district and were acting in the respective capacities heretofore stated; plaintiff made demand upon each and all of the defendants for the repayment of the money unlawfully paid to Lawrence Richardson and for the repayment of such money to the county treasurer for the benefit of the "special improvement fund"; the defendants and each of them have failed, neglected and refused to repay the same or any part thereof; this action is prosecuted in the name of the state of Kansas, on the relation of the county attorney of Jefferson county and for the benefit of the drainage district.

As stated, the first ground of appellants' demurrers was that plaintiff had no legal capacity to sue. In that connection they also contend neither the state nor the county attorney has any interest in the relief sought. G. S. 1935, 19-702, provides:

"It shall be the duty of the county attorney to appear in the several courts of their respective counties and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested."

That the question of the unlawful payment of the warrant in question arises under the laws of the state is not open to debate. The statutes pertaining to "the special improvement fund" disclose it is created by the sale of bonds and that such bonds or the proceeds thereof can be used only for the payment of special improvements which benefit particular property in the district, and that special assessments are levied upon the property so benefited. (G. S. 1935, 24-430 to 24-433, incl.) The general fund of the district is created and maintained in an entirely different manner and for a different purpose. Among the powers conferred upon the district and enumerated in G. S. 1935, 24-407, is the following:

"*Eleventh.* To annually levy and collect a general tax not exceeding five

mills on the dollar *on all taxable property within the district,* to create a general fund." (Emphasis supplied.)

G. S. 1935, 24-428, expressly provides:

"The compensation of the directors, assessors, engineers and attorneys employed by the board of directors shall be paid out of the general fund hereinbefore authorized."

In *Chaney v. Edmonds,* 153 Kan. 668, 113 P. 2d 81, involving an action to recover damages from the county treasurer and the surety on his official bond for refusal to cash a warrant (of the drainage district here involved) directing payment of attorney fees out of the "bond fund," it was held:

"Payment for the services of attorneys employed by drainage districts organized under the provisions of the drainage district act of 1905, as amended, may only be made out of the general fund maintained by such district. (G. S. 1935, 24-428.)" (Syl. ¶ 1.)

Does the fact the action was instituted for the benefit of the drainage district preclude the state from having an interest in the relief sought? We do not think so. It is true the state, as such, had no monetary interest in the judgment sought but it had a definite interest in seeing that a public wrong was righted. It therefore brought the action in its name for the benefit of the drainage district, which is a state institution. The district is a body politic and corporate. (G. S. 1935, 24-401, 24-403, 24-405, 24-407.) It constitutes a subdivision of the state and is incorporated and designed to perform a specific public function. (G. S. 1935, 24-401, 24-407.) As such, it is within the purview of G. S. 1935, 19-702, and an action can be prosecuted, as stated in the statute, by the county attorney "on behalf of the people." (*State, ex rel., v. Bradbury,* 123 Kan. 495, 501, 256 Pac. 149.) With respect to the capacity or power of the county attorney to act as the official relator of the state it should be noted, of course, that the instant action was brought, and involved a public matter, in the county in which that official was elected as the public prosecutor and not in some other county where he possessed no authority. (*State, ex rel., v. State Highway Comm.,* 133 Kan. 357, 299 Pac. 955.) The provisions of G. S. 1935, 19-702, in effect, virtually clothe the county attorney with the powers of an attorney general within his county. (*State, ex rel., v. Wyandotte County Comm'rs,* 140 Kan. 744, 746, 89 P. 2d 286.)

Appellants, however, insist the action could not be brought on the relation of the county attorney for the reason the county attorney is

nowhere expressly designated as the legal representative of the drainage district. If the action is in reality an action by the state, as we have shown the instant one to be, the authority of the county attorney to function as the state's official relator is expressly conferred by G. S. 1935, 19-702.

Appellants further argue the drainage district, as a body politic and corporate, was expressly authorized to sue and be sued and to maintain suits to enforce the reasonable orders of its directors. (G. S. 1935, 24-407, subdivisions 2d and 9th.) They therefore contend the county attorney cannot usurp that power. In support of the contention they cite *Kerby v. Clay County,* 71 Kan. 683, 81 Pac. 503; *State v. Shufford,* 77 Kan. 263, 94 Pac. 137; *Clark v. George,* 118 Kan. 667, 236 Pac. 643; *State, ex rel., v. Bradbury,* supra; *Henry v. Simon,* 128 Kan. 113, 276 Pac. 284; *Greenwood County Comm'rs v. School District,* 139 Kan. 297, 31 P. 2d 723, and some cases from other jurisdictions.

The above decisions of this court have been studiously examined. They do not support appellants' contention that the instant action cannot be maintained *by the state* on the relation of the county attorney. None of them except *State v. Shufford* and *State, ex rel., v. Bradbury* purport to have been instituted by the state. While the title of the Shufford case purports to be an action by the state on the relation of the county attorney, it was in fact brought for and on behalf of a private person on the relation of the county attorney and the right to use the name of the state for such private purpose was denied. The Bradbury case was instituted by the state on the relation of the county attorney but it does not support appellants' contention. On the contrary, it supports the right to bring an action, such as the instant one, by the state on the relation of the county attorney, provided the petition otherwise states a cause of action. That case will receive our further attention presently. The Kerby case was brought *in the name of the county commissioners* by the county attorney without the consent and concurrence of the board of county commissioners and it was held the board and not the county attorney had the right to determine whether an action should be brought *in the name of the county commissioners.* The case at bar was not brought by the county attorney in the name of the drainage district but in the name of the state.

In the Clark case cited it was held *individual taxpayers* could not maintain an action for the benefit of the county to require the re-

payment of money unlawfully paid out by it although the county commissioners had refused to institute such a proceeding themselves. In the Henry case it was held the board of county commissioners had no authority to collect a forfeiture from the county attorney, under a provision of R. S. 19-2601, for failure to keep his office open during business hours. In the Greenwood case the board of county commissioners of that county brought an action *in their own name* to recover sums of money from the city school district of Eureka and the city of Eureka whom the county treasurer had overpaid in the distribution of taxes and it was held the board was the proper party plaintiff to bring the action.

It is true the board of directors of the district possess authority and power to maintain actions in the name of the district to protect the interests of the district. Such powers are generally conferred on official boards. In fact it is their duty to faithfully represent the corporate entity in all matters pertaining to its business affairs. But do such powers and duties preclude the state from prosecuting the instant action in its own name, by its official relator when the officers of the district have taken no action to recover the moneys unlawfully paid by the county treasurer pursuant to their own unlawful direction and when such officers, their bondsmen and the payee named in the warrant, after demand upon them to repay the money to the proper fund, refuse to do so? We do not think so. As previously stated, it was not only the right but the duty of the board of directors of the district to see that the money it unlawfully had directed to be paid should be recovered for the proper fund. But where a public duty is neglected, the public, the community as a whole, is the party interested. Where a public duty is neglected, the party wronged, the public, should be the complainant, and her officers should conduct the suit. In such cases where the public suffers a wrong it is the duty of the attorney general or the county attorney, officers specifically charged with the duty of representing the public, to see that such wrongs are righted. These general principles were established early in the history of this state. (*Bobbett v. State, ex rel. Dresher,* 10 Kan. 2, 14, 15.) See, also, *State, ex rel., v. Doane,* 98 Kan. 435, 440, 158 Pac. 38.

The right of a county attorney to bring a variety of actions in the name of the state has been recognized and reasserted in numerous subsequent decisions. A few of them are *Eble v. State,* 77 Kan. 179, 93 Pac. 803; *State, ex rel., v. Labette County,* 114 Kan. 726, 220

Pac. 275; *State, ex rel., v. Bradbury*, supra; *State, ex rel., v. Wyandotte County Comm's*, supra; *State, ex rel., v. Peterson*, 147 Kan. 626, 630, 78 P. 2d 60. Can this action be defeated where the district officials voluntarily have done nothing to collect the money from the person to whom it was unlawfully paid at their direction; where they have refused, upon demand by the state, to personally rectify their unlawful acts; where the bondsmen of the district treasurer have refused, and the recipient of the unlawful payment has refused, to return the money in response to a similar demand and where the individual interest of the district officials is inconsistent with their official duty and responsibility? In other words, is the state powerless, under these circumstances, to correct the abuse in the manner here attempted? We do not think so. In *State, ex rel., v. Bradbury*, supra, the county attorney of Labette county, in the name of the state, brought a proceeding in mandamus to compel the members of the board of trustees of the Labette county community high-school district to bring an action in their official capacity against themselves as individuals to recover public funds of the district which defendants had unlawfully expended in the purchase and operation of motor buses to carry pupils of the district to and from schools. This court had previously enjoined those defendants from expending the school district's funds for such purpose. (*State, ex rel., v. Cruzan*, 120 Kan. 316, 243 Pac. 329; *State, ex rel., v. Bradbury*, supra.) This court denied the discretionary writ of mandamus and in so doing said:

"Usually the county attorney asserts the interest of the state by bringing injunction proceedings to prevent illegal action or by quo warranto to challenge the right of officials to do the acts he complains of. It does not appear that the public moneys of any subordinate division of the state, like a school district, have ever been sought to be recovered in this jurisdiction by such an action in the name of the state on the relation of its proper prosecuting officer, yet neither have we a precedent for the unique exercise of mandamus which is asked in the present case. However, there can be no difference in principle between an action by the state, *ex rel.*, to challenge the right of school-district officers to exercise some ungranted power or to enjoin them from further unlawful expenditure of public funds, and an action by the state by its official relator to recover the district funds already unlawfully expended, particularly in a situation where the district's officials are disqualified by personal interest from commencing and prosecuting such an action on their own official initiative with the requisite wholehearted vigor to get results. Whether the case be to enjoin further unlawful expenditure of public funds or to recover those already unlawfully disbursed, the county attorney, in the name of the state, prosecutes 'on behalf of the people' a civil action in which the state is in-

terested in literal conformity with R. S. 19-702. In a very real sense a school district is a state institution, and when its funds are unlawfully disbursed the state is interested in their recovery, theoretically, just as much as in the prevention of further continuing unlawful expenditures. We have admitted that our own reports do not show a precedent for the sort of action we suggest. It is a complete answer, we think, that the necessity has not hitherto arisen to consider the comprehensive character of the statute which clothes the county attorney with power to act under such circumstances as those here disclosed." (p. 500.)

The reasoning of that opinion is particularly pertinent here. The unlawful payment of attorney fees, out of a fund which could not be used for such purposes, was void as to the drainage district, and the money so paid may be recovered from the district officers and their bondsmen. (*Superior Grade School District No. 110 v. Rhodes*, 147 Kan. 29, 75 P. 2d 251.) In view of the failure of the district officers to voluntarily take action to recover from Lawrence Richardson the money they unlawfully directed to be paid to him and in view of the refusal of such officers to repay the money into the proper fund themselves, when the state demanded they do so, it manifestly is not realistic to assume such officers, in response to a writ of mandamus, would vigorously prosecute an action against themselves as individuals or against the bondsmen of the district treasurer. Indeed, if an application for such a writ were presented to this court, it would be obliged to deny the application just as it did in the Bradbury case.

Appellants next argue it is not alleged the district did not owe Lawrence Richardson the sum of $1,000 for legal services or that the district had suffered any loss or damage by payment of the warrant. They therefore argue the petition did not state a cause of action. The contention is not good for several reasons. The "special improvement fund" had been unlawfully depleted by the district officers as a direct result of a warrant unlawfully drawn on that fund. It was the duty of the district officers to return the money to that fund. This they refused to do upon demand by the state. While this is not a proceeding in mandamus, its effect, if successful, will be the same. It will compel the officers to do their duty by returning to the fund what they have unlawfully taken from it. That is exactly what the petition alleges should be done. The state has an interest in seeing that public duties are not disregarded by public officers and it is not necessary for the state, in the exercise of its right and privilege, to show any specific injury in

order to enforce official duty. (*State, ex rel., v. Labette County,* supra, 728.) If, however, it was necessary in the case at bar to plead loss or damage the petition was sufficient for that purpose. It clearly discloses a loss of $1,000 to the "special improvement fund" and that is all that was necessary.

Appellants also say they believe if this action is allowed to proceed to trial Lawrence Richardson will be denied a right of setoff to the extent of his attorney's fee. That belief, if sound, does not make the petition demurrable.

The appellant surety companies insist the petition itself states no cause of action against them on their official bonds. The contention is based upon the theory the petition discloses the principal, the district treasurer, complied with his statutory duties by depositing the district funds with the county treasurer as required by law. It is true the petition stated the funds of the district were legally deposited in the office of the county treasurer. Appellants contend the statute pertaining to the duties of the district treasurer requires only that a bond shall be given to insure the district deposits will be lawfully made. The portion of G. S. 1935, 24-415, relied upon, reads:

"The treasurer of the district shall give a bond in such sum as shall be fixed and with such sureties as shall be approved by the board of county commissioners of the county, conditioned that he will pay over to the county treasurer of the county in which the district is situated all funds that may come into his hands as such district treasurer."

The petition, however, also alleged the warrant for the attorney's fee was unlawfully drawn upon the "special improvement fund" by the district officers and that it was paid pursuant to such unlawful warrant. It further alleged it was the statutory duty of the district officers to pay such fees out of the general fund and that they could be paid only out of that particular fund. Both bonds, in substance, contain express provisions guaranteeing the faithful performance of all duties imposed upon the district treasurer. The drawing of a warrant for an attorney's fee, only out of the general fund, was one of the express statutory duties imposed on the treasurer and the other district officers. Manifestly, the bonds adequately cover the violation of this express duty imposed by law.

It is finally urged the act of the county treasurer in paying the warrants, pleaded in the respective petitions, constituted a superseding cause of the damage, if any, and therefore the county treas-

urer alone is liable. As previously stated, this is not an action for the recovery of damages but an action designed to bring about the restoration of moneys to a fund from which it was unlawfully withdrawn.

Appellants criticize the fact that the county treasurer was not made a party defendant. Since he was not made a party defendant we need not comment upon his liability. For present purposes we are concerned only with the liability of persons and officials who are actually parties defendant. The petition in case number 35,527 stated a cause of action against those defendants and the demurrer of each and all of the defendants thereto was properly overruled. It is conceded the ruling on the demurrer in that case also determines the correctness of the rulings on the demurrers in cases numbered 35,528 and 35,529. The order overruling the demurrers in each of the three separate cases is therefore affirmed.